[No. 5753.]

LOWELL ET AL. v. HESSEY.

1. Appeals—Briefs—The court declined to consider questions not discussed in the briefs of counsel.—(522)

2. Agency — Revocation — An agency not coupled with an interest is revocable; but it seems that the principal is liable to the agent for his labor, and for moneys reasonably and neces-

sarily expended in the furtherance of the agency, prior to the revocation.—(521)

To affect the agent, he must have notice of the revocation. An assignment of a sheriff's certificate of purchase is a revocation of an agency to find a purchaser therefor.—(521)

3. Pleadings—Construction—A defendant having a judgment against a third party agreed with the plaintiff that he might collect it and have all over fifty per cent. that he might realize upon it, or safely secure, within one year. Subsequently certain real property was sold under the judgment, and struck off to the defendant. Before the lapse of the year, defendant assigned the certificate to a stranger. Plaintiff brought an action for the amount which, as he alleged, he would have gained but for the defendant's revocation of his agency by the sale of the certificate. The complaint alleged that he "would have collected the judgment in full but for the wrongful acts of defendant." Held to import a collection in the ordinary way, and entirely insufficient to advise defendant that plaintiff would attempt to show that, during the subsistence of the agency, he had found a purchaser for the certificate.—(523)

4. New Trial—Newly Discovered Evidence—Surprise—Where the plaintiff's complaint indicates that plaintiff will adopt and rely upon a line of proof entirely distinct and different from that in fact adopted upon the trial, and defendant has no reason to anticipate that plaintiff will attempt to establish the facts to which his testimony upon the trial is directed, and acting with diligence produces affidavits which tend to negative the testimony upon which plaintiff recovered a verdict, and the testimony is such as, upon a second trial, will probably produce a different result, he is entitled to a new trial.—(523, 524)

*Appeal from Denver District Court*—Hon. Peter L. Palmer, Judge.

Mr. Fred Herrington, and Mr. E. M. Sabin, for appellants.

Mr. M. B. Carpenter, and Mr. Louis P. Wagner, for appellees.

Mr. Justice Musser delivered the opinion of the court:

On December 27, 1899, one Bailey recovered a judgment in the district court of Clear Creek county

for $1,495.93 and costs and $150.00 attorneys' fees. Eighteen or nineteen creditors of the judgment debtor were interested in this judgment, among whom was the appellant Lowell, whose interest was small. The appellant Sabin was the attorney for Bailey and the other creditors and had an interest in the judgment for attorneys' fees.

On April 7, 1903, Bailey, Lowell, Sabin and the appellee Hessey entered into a written contract, whereby Hessey was appointed as the agent of the other three for the collection of the judgment. It was agreed that Hessey should have all over fifty per cent. of the judgment, exclusive of interest, as his compensation for collecting the same, provided it was collected or safely secured within one year. Hessey agreed to at once initiate such proceedings to collect the judgment, as in his opinion would result in securing or collecting it. Hessey was authorized to receipt in full for the judgment and to retain fifty per cent. thereof, exclusive of interest. The assets of the judgment debtor consisted of mining claims upon which there was, or had been, a prior lien of about $15,000.00. With this lien unsatisfied, the Bailey judgment was worthless. Hessey claims that in April he knew or had information, that this lien was in fact satisfied and endeavored to purchase the Bailey judgment for $500.00, which he was unable to do. He continued negotiating with Mr. Lowell for the judgment and finally in June the contract of agency was entered into and dated April 7th. Hessey says that before it was signed he went to Kansas City, the headquarters of the judgment debtor, to satisfy himself that the prior lien was discharged. He says he so satisfied himself. Whether the prior lien had in fact been discharged is left to conjecture. Inasmuch as his efforts to collect the judgment, after the execution sale hereinafter mentioned, were con-

fined only to an attempt to assign the certificate of sale to third parties, it is to be inferred Hessey's information was wrong and that the prior lien still existed. In any event, Hessey did not, at any time, inform Bailey, Lowell or Sabin, or cause them to be informed, that he had information that the prior lien had been satisfied, until after he had procured from them the written contract. On June 24, Hessey caused an execution to issue upon the judgment and on August 19, the mining claims of the judgment debtor were sold under this execution. None of the defendants were present. Hessey's agent bid in the property for the full amount of the judgment, and caused a certificate of sale to be made to Bailey, and the execution was returned satisfied. What became of this certificate is not clear, although it appears that it remained in Bailey's name, and he probably had it. On March 10, 1904, Bailey and Lowell were requested, on behalf of Hessey, to forward the assignment of the judgment and sheriff's certificate of sale to the Denver National Bank, to be turned over to Hessey upon payment of fifty per cent. of the judgment, as he was about ready to pay that amount. On April 1, a letter, on Hessey's behalf, was sent to Sabin, telling him to forward an assignment of the judgment and the certificate to the bank, to be turned over to Hessey, upon payment of the amount due on Hessey's contract, and that Hessey was ready to pay the money and close the matter. This was the first and only notice which the record shows that Sabin and Lowell ever received that Hessey was ready to turn over any money to them. In the latter part of December, 1903, Bailey assigned the certificate to one Kerr for $1,000.00. This money was deposited in a bank to Sabin's credit, with instructions to pay it to those interested in the judgment, which was done. Hessey brought this action against Bailey, Lowell

and Sabin, to recover the amount which he would have received had he collected the judgment, alleging in substance that during the year, and while the contract of agency was in effect, through his efforts the judgment would have been collected, had the defendants not prevented it. Hessey recovered judgment and from this Lowell and Sabin have appealed.

It is true, as appellants contend, that the contract of agency was not coupled with an interest in the judgment in Hessey, and that the contract was therefore revocable at any time by the defendants. This rule is laid down in Mechem on Agency, sec. 204, *et seq.*, and is supported by the authorities. It is also probably true, as the appellee contends, that the defendants could not revoke the agency without becoming liable to Hessey for labor and money reasonably and necessarily expended by him in the furtherance of his agency, prior to the revocation. This, however, is an action to recover the full compensation due on the contract, as though performed by the agent and unrevoked, and is not an action to recover for money and labor expended as aforesaid. It is also true that the assignment of the certificate to Kerr amounted to a revocation of the authority of Hessey, so far as the defendants were concerned; but it is said in Mechem on Agency, at sec. 223, that in order to render the revocation effectual, notice of it must be given to the agent. It is gathered from the record that on April 2, 1904, Sabin, from Idaho Springs, in response to the letter of April 1, from Hessey's attorney, requesting the forwarding of the assignments to the bank, wrote to the attorney at Denver that the certificate had been disposed of some time before. This is the first the attorney knew of the assignment and Hessey testified that he did not know of it at that time. The attorney notified Hessey at Kansas City of Sabin's letter. It does not

appear how soon the attorney wrote to Hessey. In any event, Hessey could not have received a letter from his attorney until about the close of the year of the contract on April 7. It is also to be gathered from the record that what was done by Hessey toward collecting the judgment was all that could have been accomplished by him during the year, had Bailey not assigned the certificate to anyone.

The theory of the plaintiff, as conveyed to us by his evidence, seems to be that he claims that while the contract was in effect he was ready and offered to pay to Lowell and Sabin the amount coming to them on the judgment, and that he depended for his compensation upon his ability to sell the certificate, and he claims he had found a purchaser therefor, so that he would have received his full compensation. Two things are necessary to sustain this theory. It must first appear that Lowell and Sabin would have received their part from Hessey, and second that Hessey would have sold the certificate for its face value, for under his theory, he could not realize any money from it without selling it. Whether or not this theory conforms to the allegations of the complaint, or is a fulfillment, if sustained, of the contract of agency is not determined, because not discussed in the briefs. We do not determine the sufficiency of the evidence introduced by plaintiff to prove that he had sufficient money to pay the defendants what they were entitled to, and to take up the certificate, nor that he offered and was ready and willing to pay them this money, nor the duty of the defendants to comply with his requests to forward the assignments, nor the sufficiency of the evidence introduced by plaintiff to prove that he had found a purchaser for the certificate, nor the effect, if proven, of either or both of the two things, which it was necessary for the plaintiff to prove to sustain his theory, for some

of these questions are not fully argued in the briefs, and if all of them were resolved in favor of the plaintiff, nevertheless, on the record before us, the judgment in this case must be reversed, on account of an error which was highly prejudicial to the appellants.

In his testimony, the plaintiff attempted to make it appear that one Stone would have purchased the certificate from him. This was the first knowledge or notice that the defendants had of this alleged transaction with Stone, or that Hessey could have sold, or claimed to have been able to sell, the certificate to anyone. There was nothing in the pleadings to apprise the defendants of any such thing. On the other hand, the complaint alleges that the plaintiff would have collected the judgment in full, but for the wrongful acts of the defendants, and such allegation would at least convey the impression that he would have collected it in the ordinary way. It clearly appears that defendants had no reason to anticipate any such testimony, nor could they have prepared to meet it, under the circumstances. After the trial, defendants got into immediate communication with Stone and obtained from him his affidavit that he would testify, in effect, that he never offered to purchase the certificate from Hessey, and refused to deal with Hessey about the certificate, and, in short, that Stone would not have purchased it. This affidavit was the first notice to the defendants that Stone would so testify. The defendants presented their motion for a new trial, with this affidavit and others in due time, alleging, among others, as cause for a new trial this newly discovered testimony of Stone. The motion for a new trial was denied. In view of all the facts and circumstances connected therewith, the defendants ought to have been permitted to have obtained and introduced this testimony of Stone, which had all the requirements of newly

discovered evidence set forth in *Colo. Springs R. T. Ry. Co. v. Fogelsong,* 42 Colo. 341, at 350.

The judgment will, therefore, be reversed and the cause remanded.          *Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMP-BELL concur.

Opinion announced November 1, A. D. 1909; rehearing denied December 6, A. D. 1909.